FILED OCT 09 2026 CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
"TAMPA DIVISION"

DARELL L. FIELDS,

Plaintiff,

CASE NO.: 8:26-cv-3085-JLB-LSG

v,

THE CITY OF LAKELAND,
PRESTON G. CHATMON

Defendants.
______________________________/

## COMPLAINT AND JURY DEMAND

Plaintiff, DARELL FIELDS, by and through the undersigned prose respectfully state a claim for relief as follows:

## INTRODUCTION

1. On May 14, 2021, I Darell Fields was an over the road Trucker, returning to work from home time. I was in Lakeland, because that's where I parked my company assigned Semi Truck. On my way toward work I saw a lot of vehicles for sale, and Two Semi Trucks parked among the cars, I was interested in one of the trucks, but it did not have a for sale sign on it. I went to one truck, and left my name, number and a message on the left mirror asking if it was for sale and departed the lot. I went to the stop sign after making a left from the lot and I saw a Lakeland K9 unit truck blacked out parked, made a left, and at the next stop sign, I stopped, but before I could leave a bright light was shined/shone on my vehicle from the rear. I remained at the stop sign, because I thought it was an officer, shortly someone walked up on the right passenger side of my vehicle near the rear, and said give me your insurance and registration. I asked why do you



$405
TPA78026

need my insurance and registration. He didn't answer why?, I needed to give my personal information to him without an explanation. No official notification or greeting was ever given, by the person, and no siren or red and blue emergency lights were ever used on the early morning of May 14 2021. I took out my phone and began video recording the officers face, and voice. While simultaneously asking the officer why or what is the reason for him being at my car several times on video, he did not answer. I said sir if you don't tell me why you are at my vehicle, we have nothing further to talk about. The person backed out from my vehicle, made a hand gesture and I left that location with a phone recording video of our encounter that clearly showed police misconduct. The person never told me that I was being detained, and he had stopped talking, and I told him he was breaking the law for being at my car without a reason, I was free to leave which was captured on video.

2. I left head to my work truck, I noticed I was being followed, the vehicle following continued, with no siren, or red and blue emergency lights were ever used. I decided to pull my vehicle into the middle of Florida Avenue across from Salem's restaurant, and Memorial Blvd, I stopped because I wanted to see if the vehicle was following me, or if it would keep going, or stop following me. However, I stopped my vehicle where it was well lite. I stepped out of my vehicle with my hands raised high still video recording. A Lakeland Police K9 SUV pulled up, close behind my vehicle. I recorded, Lakeland Police, K-9 Officer Preston Chatmon step out of his vehicle pointing his gun at me for no reason. I was told to get on the ground, for no reason. He came close to me, and said "you are not going to comply", I said comply to what? He kept his Gun pointed at me I asked him why? Are you pointing a loaded gun at me when clearly see all I have is my phone in my hand, he didn't answer me. Because he would not stop pointing his gun at me, I asked him to call a Polk County Sheriff deputy, he said there is one around here on standby

somewhere, he spoke as if he had called someone, but no sheriff came. I told officer Chatmon I am going to call the sheriff my-self, but before I could dial 911, he quickly holstered his Gun, took out his Taser and tased me in my chest without probable cause, I had never been told why he was on to me? Me and my phone video fell on the road pavement after I was tased, he jumped on me and buried his knee into my back, and cuffed me without any explanation of what I was suspected of doing wrong, or why? he had violently attacked me. He left me standing by a parked vehicle cuffed. Officer Preston G. Chatmon picked up my phone from the road, and after other officers came on scene, he went to them with my phone video evidence, and he viewed the content of my phone video evidence, with other officers, without a warrant, probable cause, or my permission and that is the last time my ever seen. Next an officer drove my Ford Mustang GT, from the middle of Florida Ave., into the parking lot of Salem's Restaurant Eatery. As my vehicle was being searched, by officer Chatmon and other officer's, I was put into another squad car and sent to the Lakeland Police Department. My vehicle was seized, search, and ransacked without a warrant, probable cause, or without my written permission, violating my 4th and 14th amendment. However, my vehicle was impounded without Officer Chatmon ever reporting that in the police report, that my vehicle had been search, seizure, and impounded. another violation of my 4th, and 14th amendment. After the violent attack I thought, I was going to the hospital for needed medical treatment, instead I was taken to the Lakeland Police Department, and left on a curb in the sally port of the police dept for hours. While other Lakeland Police Department Officials came out to the sally port, and viewed the content of my Cell Phone that I was violently attacked, illegally detained, falsely imprisoned, and then later sent to jail without doing anything wrong. I was separated from my phone video evidence, and I have never seen it since 5/14/2021.

**Jail Release**: When I was released from Polk County Jail, the Sheriff's told me that my phone evidence, was never entered into their property. However, I became horrified knowing that Officer Chatmon was still in possession of my Phone video evidence, with him knowing what I had recorded him doing on the video.

My phone was taken from the area of Salem's Restaurant, and taken to the Lakeland Police Department, and from the Lakeland Police Department on to Kathleen Road, to 3373 Mahogany Pointe Loop, which happens to be the address for the arresting officer. I contacted Lakeland Police Department, several times searching for my phone and they said they didn't have my phone I was forced to purchase a new phone.

About three days later I contacted the Internal Affairs Department, and made a written complaint and asked for my phone video evidence to be returned, they said they didn't know where it was, because it had not been entered into evidence at that time.

## JURISDICTION

3. Jurisdiction is conferred upon this Court by 28 U.S.C 1331, and 1334, 1367, and arises under 42 U.S.C. 1983, 1985, 1988, and The Fourth and Fourteenth Amendments of the United State Constitution.

## VENUE

4. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. 1391 because the events and conduct giving rise to PLAINTIFF'S claims all occurred in State of Florida, Polk County in the CITY OF LAKELAND.

**PARTIES**

5. Plaintiff Fields is over the age of eighteen and a resident of Polk County Florida. Defendant The City of Lakeland was at all times relevant, Florida Municipality.

6. Defendant, the City of Lakeland was at all times relevant to this Complaint, a Florida municipality.

7. Defendants Preston G. Chatmon is a natural person, and was at all time relevant to this Complaint duly appointed and sworn as a K-9 Police officer for the City of Lakeland, in Lakeland, Florida.

At all times relevant hereto Officer Chatmon was acting under color of Law, course and scope, including when his actions were in violation of the Constitutional laws of the State of Florida, and the Constitution laws of the United States. Officer Chatmon is a named defendant in his individual capacity.

FACTUAL ALLEGATION
(Darell Fields)

8. Plaintiff Fields have been a local, and long distant over the road trucker, for over twenty years. Plaintiff was happy, healthy, financially stable, and looking forward to purchasing my first home, and Semi-Truck.

9. Mr. Fields drove in forty-eight states, but had taken a week off, and was returning back to work from some home time.

10. Headed back to work I drove into Lakeland, and I was on Memorial Blvd, and I saw a Semi Truck in a field off from Memorial Blvd., that interested me. I went to the truck, and left my personal information on it, and asked a question if it was for sale, and I left.

11. When I, Mr. Fields left the Truck I went to the stop sign and stopped, made a left-hand turn, and went to the next stop sign and stopped.

12. **The first incident.** Before I, Mr. Fields could leave the second stop sign, a bright light was shined/shone on my vehicle from behind me, and initially I did not know why? the light was shining on my vehicle.

13. Shortly the officer came up on the right passenger side of my vehicle and said give me your registration and insurance, there should have been a verbal reason for such a request.

14. I, Mr. Fields said what do you need my insurance and registration for several times because he failed to give me a reason.

15. I took out my phone and started video recording what was going on, there were no red and blue emergency lights activated. As I was recording, my phone was recording in the direction where the person was, to record his face and voice and failure to state probable cause or reason of suspicion.

16. I was successful at video recording the initial incident of this person.

17. I became very up-set, because he approached me in the night and secondly without telling me why he was there? He was shining the bright light at me, when I did not do anything wrong

18. Plaintiff stopped voluntarily because of the bright light that was shone on my vehicle could be the police, was the reason I stayed, until he started playing games, and I need to prepare for work.

19. This was never a traffic infraction, I stopped at both stop signs, so therefore I was not moving. There were no reasonable suspicion ever mentioned, and plaintiff was never told that he was being detained.

20. The person never introduced himself as an officer of the law. I said what is your reason for being at my vehicle, he stopped talking.

21. I told him, if you don't tell me why you are at my vehicle we have nothing further to talk about. He said nothing further and backed away from my vehicle and made a hand gesture, I thought the matter was over.

22. I Mr. Fields drove off, heading in a direction to get back on Memorial Blvd., to go toward my work truck.

23. After a short while it looked as if I was being followed, an SUV appeared to be following me at a distance, I had continued my phone video recording, I continued driving and ended up on Florida Avenue.

24. **Plaintiff's second incident.** This time I, plaintiff pulled my vehicle into the middle of Florida Ave., across from Salem's Restaurant close to Memorial Blvd., and I got out of my vehicle with my hands raised, still recording.

25. There were no siren or emergency lights being used by Officer Chatmon, he drove his vehicle, close up behind plaintiff's vehicle, where plaintiff's hands were raised, holding my phone, and still recording video.

26. The Officer that drove up behind my vehicle, it turned out to be the same person that had initially shone the bright light on my vehicle in the dark, and harassed me for registration and insurance without a reason.

27. The Lakeland K-9 officer emerged from his vehicle, pointing his Gun at, plaintiff for no reason without saying anything,

28. The K-9 officer failed to tell me what he was following me for, I continued phone video recorded officer Chaton, waiting for his answer, but he never gave me any answer.

29. He said "you are not going to comply", and I said comply to what, he had not told me what I need to comply to.

30. K-9 Officer Chatmon kept his Gun, fixed on me. I did not know what he was going to do next, so I asked him to call the Polk County Sheriff on the scene. He said one is on call around here, but no deputy ever came.

31. Officer Chatmon kept his gun pointed at me, kept me in fear for my life, because he would not tell me, what wrong he suspected me of doing.

32. After waiting for a while and no Polk County Sheriff deputy showed up, I said, I am going to call the Sheriff for myself.

33. Officer Chatmon grabbed my arm and tried to take away my phone, but was not successful.

34. Officer Chatmon threatened plaintiff that he would sic his Dog on my ass, I said why? I not running. " I will sic my dog on your ass".

35. Before I could dial 911 to ask for the sheriff, Officer Chatmon quickly put away his Gun, and drew out his Taser and Tased me in my chest without any reason or explanation which was also captured on video.

36. Officer Chatmon used excessive force on plaintiff without as reason, he was he was video recorded, committing police misconduct including, when he stepped out of his vehicle pointing his gun at Mr. Fields.

37. At the time before I was tased, the officer never had a reason for having to take out his gun or Taser in the first place, because I was just standing there not moving at all talking to the officer.

38. As Police Officer Chatmon were tasing Mr. Fields, his phone fell on to the pavement along with Mr. Fields. Officer Chatmon got on plaintiff, and buried his knee into my back and hand cuffed me without explanation.

39. Officer Chatmon, falsely arrested plaintiff, he picked up Mr. Fields' phone video evidence from the road where it fell, and after other Lakeland Police Officers arrived, he with them huddled together and viewed the content of my phone without my permission, a warrant, or probable cause.

40. Lakeland Policer Department's, K-9 Officer Chaton took physical possession of my phone evidence on Florida Ave., and Memorial Blvd., across from Salem's Eatery. He seized, searched, and confiscated, Plaintiff phone video evidence, without probable cause, a warrant, or my written permission.

41. On Florida Ave. and Memorial Blvd., across from Salem's Restaurant Eatery, this is where Officer Chatmon unlawfully seized, searched and ransacked plaintiff's vehicle, without an explanation without a search warrant, probable cause, or my permission.

42. **The second time my phone evidence was viewed.** My phone was taken to the Lakeland Police Department, where I watched other officers come

outside of the station and viewed the content of my phone video evidence, without probable cause, a warrant, or my permission.

43. I asked officers to give me back my phone, and a female officer came to where I was sitting, she wagged my phone in my face, and said oh you mean this phone right here I said yes, she laughed and walked off.

44. After plaintiff was taken to the Lakeland Police Department and left on a curve for hours, without any explanation.

45. After being tased no one took me to the hospital to remove the tines.

46. EMS came to the Police Station and snatched the taser tines out of my chest, it pulled out a big chunk of my chest, and left a hole in my chest.

47. Plaintiff was eventually being taken to Polk County Jail. And I asked the transport officer, why? was I being arrested, he explained to me that it was for fleeing or attempted to elude, and resisting arrest without violence, that never happened.

48. I asked the transport officer what was the name of the, officer that had arrested me, and this is how? I learned the officer's name and what I was being charged with.

49. Plaintiff's phone video evidence was taken from Florida Ave, and Memorial Blvd, to the Lakeland Police Department.

50. Later Plaintiff's Phone video evidence was taken from the Lakeland Police Department, where it ended up at Officer Chatmon's home/residence address located at 3373 Mahogany Pointe Loop, verified by GPS Tracking History.

51. The City of Lakeland police dept Record Division, time stamp shows officer Chatmon returned Plaintiff's phone to evidence, taken on 5/14/2021, was allegedly returned on 5/18/2021, which is four days later, but no one has been able to find plaintiff's phone video evidence for discovery, or from several orders from the Court.

52. All request by Plaintiff's Attorney, during hearings, no one, including the State Attorney office allegedly did not know where the phone was, and have never complied with Court orders to produce the phone.

53. Plaintiff Fields, lost everything, job, marriage, health, financial stability income, saving, credit, insurances, vehicle, loss of residence, loss of income for over eighteen months, and I have never been able to over-com my losses and have never been compensated for my losses.

54. I Lost potential Government Contracts, because the CDL portion of my driver license were hindered due to a fleeing to elude or attempted fleeing to elude driving charge written by, the agency and agent(s) defamation.

55. When Plaintiff thought, I am going back to work, the officer defamation of me created a detailed fabricated, false narrative in his sworn affidavit

policer report. And sent it to the Florida State Attorney's Office for prosecution, my employer became informed.

56. Plaintiff Fields Suffered physical injuries requiring medical treatment, including, but not limited bruising hematomas, contusions, numbness, stiffness, swelling, skin disorientation, headaches, lower back pain and discomfort because the officer tased me 3 times over my heart.

**INVESTIATION:**

57. **Internal Affairs Complaint**: Mr. Fields has done as I should, being a citizen wronged. I have called, and written to Internal Affairs, made official complaints, a couple of times, and they have not done anything meaningful to investigate into police misconduct, and corruption. They closed my first complaint, they said they did not know where my phone was, and failed to provide me with requested copies of Lakeland Police Department policy for years. However, what has happened is more crucial than just a case about evidence tampering and denying plaintiff access to LKPD police policies.

58. This is a case where it appears that Internal Affairs, are participating in the over up.

When Police Officer Chatmon approached Plaintiff an innocent person, without reasonable suspicion or probable cause. He fails to identify himself as a police officer, he discriminated, profiled, stalked, harassed, points a gun at Mr. Fields threatens to shoot or kill Mr. Fields

59. Officer Chatmon tased Mr. Fields, and denied him proper medical treatment. Then he illegally seized, search, and confiscate Plaintiff's phone video recorded evidence, that would have revealed the fact of 5/14/2021.

60. He also seized, searched, ransacked, and impounded Mr. Fields' vehicle without a warrant, probable cause, or written permission.

61. Officer Chatmon failed to list all the property that he took from plaintiff Fields, which should have included a car. I have not found any report showing that my car was ever listed into property, except the photos showing a Recker in the process of removing my vehicle from Salem's Restaurant parking lot.

62. Initially Officer Chatmon police report stated that he allegedly chased a dark colored sedan in the1200 block of Memorial Blvd. But before he could chase the dark colored sedan, he had to run to get into his department issued vehicle, because he was not inside of his vehicle, because he was standing on the side of the road.

63. However, Plaintiff did not have any incident involving any police officer in the 1200 block on Memorial Blvd.

64. However, during his alleged high-speed chase, officer Chatmon never used a department issued radar detector, he never used his emergency red and blue lights, or the CAD system informing headquarters of a hot pursuit

65. The alleged high rate of speed the dark sedan was never captured, on the patrol's dash camera evidence footage, which remains in the possession of the Lakeland Police Department.

66. Plaintiff's first incident with Officer Chatmon started on or about Quincy and/Virginia Ave.

67. Officer Chatmon never stated him name, neither did he introduced himself as a police officer, and never accused plaintiff of committing any crime Quincy /Virginia location.

68. Officer Chatmon was the charging officer, and also the officer that conducted the Investigation for the State Attorney's Office.

69. Officer Chatmon freely added false and fabricated information into several reports without any oversight of Lakeland Police Department.

70. He has faced no consequences for fabricating false reports, stolen evidence, concealing evidence, using excessive force and threatening someone's life.

71. The FL. State Attorney's Office relied on Officer Chatmon's Investigation Completely in order to file charges against Mr. Fields. Officer Chatmon Fabricated Police reports, where he concealed evidence, tampered with evidence, he self-notarized official State documents and sent them to the State of Florida and the State Attorney's Office.

(See: Attachment # 9 and 9-A)

72. Officer Chatmon, tried to secure a prosecution and conviction, based on Evidence tampering, a fabricated police Report, when in fact plaintiff had not committed any of the crimes, Officer Chatmon alleged.

73. The above-mentioned ratification promoted the belief that they can violate the rights of a person, such as Plaintiff, with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

74. After eighteen months Florida Assistant State Attorney dismissed, terminated all unlawful criminal charges and issued a, Notice of Nolle Prosequi, on October 18, 2022. (See: Attachment 29).

**FIRST CLAIM FOR RELIEF**

42 U.S.C. 1983 – 4th Amendment Violation – Unreasonable seizure Excessive Force

(against Defendant Preston Chatmon)

75. PLAINTIFF hereby re-allege each and every allegation of this Complaint with the same force and effect as if fully set forth herein.

76. Officer Chaton initial false charges caused SA Haas, and ASA Bennett to engage in prosecutorial misconduct, unlawfully charging plaintiff without probable cause.

77. Officer Preston Chatmon, and ASA Harold Bennett failed to submit evidence that would have exonerated plaintiff, when plaintiff Fields was charged criminally and was the defendant.

78. ASA Bennett practiced like entrapment, or pressuring plaintiff to admit to a crime by promising plaintiff that he would vacate excessive charges, and trying to persuade plaintiff to admitting lesser charges when plaintiff had not committed a crime.

79. Inducing a plea bargain through threat or unfounded assurances.

80. Assistant State Attorney Bennett intentionally presented false evidence or falsified witnesses that did not exist, that were factually untrue.

81. Officer Chatmon, used State Attorney Haas to falsely file criminal charges with the intent to slander, or seek revenge against plaintiff Fields.

82. Officer Chatmon, ASA Bennett intentionally, falsely, pursued unlawful criminal charges with intent to slander or seek revenge against plaintiff Fields. Officer Chatmon employed excessive force, in violation of the Fourth Amendment.

83. Officer Chatmon, caused State Attorney Haas to bring criminal charges in bad faith without realistic hope of winning a conviction, is most egregious, shocking, and an abuse of power reasonable or justified under the circumstances.

84. State Attorney had a duty and ample opportunity to stop the ongoing prosecution against plaintiff Fields, but chose instead to continue, for eighteen months.

85. Officer Chatmon's use of the Taser on Plaintiff Fields was without warning, was excessive and, in the case of an innocent individual like plaintiff Fields carries obvious and known risk of death of black men.

86. Officer Chaton rammed his knee into plaintiff's lower back and he placed handcuffs on plaintiff which was unreasonable seizure and excessive force without probable cause in violation of the Fourth Amendment.

87. Officer Chatmon used his Taser and His knee on Plaintiff Fields while plaintiff Fields showed no signs of resistance whatsoever, excessive force used

is a violation of the Fourth Amendment, and yet another assault on plaintiff Fields person the officer had a duty and an opportunity to stop.

88. The fourth Amendment forbids unreasonable seizures, which includes seizures carried out with excessive force, like this one on plaintiff.

89. The defendants unreasonably and unconstitutionally seized Plaintiff Fields and used excessive force in light of the totality of the circumstances, including by not limited to:

a. Plaintiff Fields posed no physical threat to anyone, anywhere;

b. Plaintiff Fields had his hands up in the air making the possibility that he had a hidden weapon actually impossible.

c. Plaintiff Fields was not attempting to flee nor could he flee, as he was standing on the out-side of his vehicle and Officer Chatmon emerged out from his vehicle with his Gun drawn on Plaintiff Fields, officer Chatmon was blocking plaintiff.

d. Plaintiff Fields was compliant with Officer Chatmon in spite of plaintiff not being told what crime he was suspected of committing.

e. Plaintiff Fields race, and gender, was associated with being profiled.

f. Officer Chatmon did not yet have any evidence corroborating the officer claim that plaintiff was driving, fleeing or attempting to elude.

Officer Chatmon did not yet have any reasonable suspicion, or probable cause to believe that plaintiff Fields had committed any crime.

g. Plaintiff Fields was initially in his vehicle, but was being stalked by the officer and got out of his vehicle to avoid being shot inside the vehicle.

90. Plaintiff Fields' right to be free from unreasonable seizure and excessive force as described herein was clearly established at the time defendant Chatmon attacked him, tased him without violence, causing him to fall on pavement of the road ramming his knee in Plaintiff's back and cuffing.

91. Officer Chatmon effected his assault, and injures to Plaintiff Fields with deliberate indifference to his rights under the Forth Amendments to the U.S. Constitution.

92. Office Chatmon hidden seizure and violent assault upon plaintiff Fields caused him to experience great physical pain, injury, and terror. The experience of these events caused and continues to cause Plaintiff Fields trauma and emotional distress, along with lasting physical injuries.

## SECOND CLAIM FOR RELIEF

42 U.S.C. 1983 Federal Constitution-Unlawful Seizure?
(against Defendants Chatmon)

93. Plaintiff hereby incorporates all other paragraphs of this complaint as if fully set forth herein.

94. The Officer acted under color of Federal law and the course and scope of his employment as LKPD police office at all times relevant to the allegations in this Complaint.

95. At all relevant times the individual were "Peace Officer" under federal Stat. and were employed by a local government.

96. Plaintiff Fields had a protected interest under the Federal Constitution 4th amendment in being secure in his person from excessive force by law enforcement personnel.

97. Officer Chatmon unreasonable seized and detained Mr. Fields, in violation of his Constitution State of Florida and Federal.

98. Officer Chatmon did not at any-time during the encounter with Mr. Fields have any probable cause or reasonable suspicion or any other legally valid basis to believe that Mr. Fields had committed, was committing, or was about to commit any violation of law.

99.Officer did not have a warrant authorizing the seizure of Plaintiff Fields and entry into his property.

100. Officer Chatmon seized and attacked Mr. Fields against his will, despite lacking any legally valid basis for the seizure.

101. He had no reasonable basis to believe Plaintiff Fields posed a threat of harm to the Officer or anyone else.

102. The force used against plaintiff Fields by Office Chatmon, as described herein, was objectively unreasonable and excessive.

103. Officer engaged in use unreasonable and excessive force against plaintiff Fields and therefore Chatmon is liable for the damages resulting from the objectively unreasonable and excessive uses of force against plaintiff Fields.

104. Defendant subjected or caused plaintiff Fields to be subjected to the deprivation of individual rights secured by the Federal Constitution.

105. Officer Defendants did not act upon a good faith and reasonable belief that their actions in using unreasonable and excessive force against plaintiff Fields were lawful.

106. The acts or omissions of the Officer were the moving force behind and the proximate cause of injuries sustained by plaintiff Fields.

107. The City of Lakeland failed to reasonably train and supervise Officer Chatmon in issues relating to the use of excessive force against plaintiff Fields were lawful. de-escalation, proper investigations, despite the obvious need to do so. Which is why plaintiff requested that the Sheriff Department be called.

108. The City of Lakeland knew or should have known that their failure to adequately supervise and train officer, in such issues relating to unlawful force, investigations and de-escalation, was likely to harm individuals like plaintiff

Fields; it was reasonably foreseeable that this failures in this area would cause the harm or a similar harm that plaintiff Fields has suffered, is suffering and will suffer.

109. In failing to reasonably train and supervise officer Chatmon, in such issues relating to the use of excessive force, defendant cause plaintiff Field to be subjected to the Deprivation of his right to be free from the use of excessive force by law enforcement officer as guaranteed by the U.S. Constitution 4th amendment.

110. Defendant action and omissions violated plaintiff Fields constitutional rights and were a substantial and significant contributing cause and proximate cause of plaintiff Fields' damages.

## THIRD CLAIM FOR RELIEF

42 U.S.C. 1983- 4th Amendment Violation-Municipal Liability for Unconstitutional Custom/Practice, failure to train, Failure to Supervise

(against Defendant the City of Lakeland)

111. Plaintiff hereby incorporates all other paragraphs of this Complaint as is fully set forth herein.

112. All of the acts described were done by Chatmon and intentionally, knowingly, willfully, wantonly, maliciously, and recklessly in disregard for plaintiff Fields federal protected rights, and they were done pursuant to the pre-existing and ongoing deliberately indifferent customs policies and practices of the Defendant City of Lakeland, under color of Federal law.

113. The City of Lakeland custom and practices of unlawful conduct (and failures to train/supervise to prevent the Same) proximately causing the harms described herein to plaintiff Fields include. But are not limited to:

a. Lakeland Policies' custom and practice o permitting its officer to aggressively and violently arrest any citizen at the first sign of possible non-compliance with ay command (regardless of whether that command is actually lawful);

b. Lakeland Police custom and practices of ignoring all it written policies regarding de-escalation, reasonable use of force, appropriate treatment of people who are standing beside their vehicle and conducting responsible investigations into crimes before attempting to unlawful arrest people;

c. Lakeland Polices custom and practices of staging the scene of any excessive force incidents by positioning key evidence items in order to make the force that was used appear more justified;

d. Lakeland Polices; custom and practice of refusing to discipline its officers for misconduct and on-going failures to ever find its officer have caused wrongful harm to citizens, in the face of obvious and repeated constitutional violations which resulted in a

foreseeable culture of police brutality and silence in the face of ongoing and repeated civil rights violations.

114. The deeply inadequate training and facially defective policies and practices maintained at Lakeland Police Department are amply illustrated in the form that LKPD officers are to fill out every time they employ force on a citizen.

115. One need to only look at the broad open-ended, limitless list of justification for use of force provided to officers on their LKPD Responses to Resisting Report".

116. The answers in plaintiff Fields case, is that there are no boxes to check, because of fraud and fabrication. The Officer filling out sworn affidavit includes documented proclamation that the force used was necessary.

117. The unlawful conduct of officer Chatmon, as set forth in detail, herein, amounts to a custom and well-settled, widespread overall practice of police brutality deliberately insulted from police accountability, throughout the Lakeland's Police Department, even if not authorized by written law or express municipal policy, and is so permanent and well-settled as to constitute a custom or usage with the force of law.

118. Through the Defendant City of Lakeland Polices continuous ratification of unconstitutional detentions, arrest, prosecutions, and excessive force,

Defendant Lakeland Police had condoned and become the driving force of the unconstitutional conduct.

119. Defendant City of Lakeland knowingly hired a police officer with a documented history of poor judgment and improper uses of force, and being aware of the same, still failed to properly train and supervise its officer to avoid his foreseeable uses of excessive force, unlawful seizures and abuse of citizens, particularly those who are profiled black men, otherwise vulnerable to suffering greater harems from such misconduct.

120. Defendant Lakeland policies, customs and practices in failing to properly train and supervise its employee were the moving force and proximate cause of the violations to plaintiff Fields 4th amendment constitutional rights.

121. The acts or omissions of Defendant The City of Lakeland caused plaintiff to suffer physical and mental pain, among other injuries, damages and losses.

122. The actions and omission of Defendant the City of Lakeland as described herein deprived plaintiff Fields of the rights, privileges, liberties, and immunities secured by the Constitution of the United States and caused him other damages.

**FIFTH CLAIM FOR RELIEF**

Municipal Liability for Unconstitutional Custom Practice or Policy
(42 U.S.C. 1983)

(By Plaintiff against The City of Lakeland)

123. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

124. By reason of the aforementioned policies practices of the City of Lakeland and defendants, Plaintiff were severely injured, and subjected to pain and suffering, and loss of enjoyment of life.

125. Defendant(S) The City of Lakeland and agents together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraph above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendant also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff, and other individuals, similar situation.

126. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant the City of Lakeland and others acted with an intentional reckless, and callous disregard for the constitutional rights of plaintiff Fields.

127. Defendant(s) The City of Lakeland and others actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibility.

128. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by The City of Lakeland and official were affirmatively linked to and were a significant influential force behind plaintiff's injuries.

129. By reason of the acts and omissions of Defendants, The City of Lakeland and official, Plaintiff incurred damages, including but not limited to, medical expenses, loss of enjoyment of life and earning capacity.

130. By reason of the acts and omission o The City of Lakeland, and official Plaintiff have suffered loss of love, companionship, affection, comfort, care, society, and future support.

131. Accordingly, Defendant(s) the City of Lakeland and official, are liable to Plaintiff for compensatory damages under 42 U.S.C.1983.

## **SIXTH CLAIM FOR RELIEF**

14th Amendment-Substantive Due Process violation

(against Defendant Chatmon)

132. Plaintiff hereby incorporates all other paragraphs of this Complaint as if full set forth herein.

133. Officer Chatmon attacked plaintiff Fields, an unarmed profiled black man after he exited his vehicle for safety concerns and stood beside his vehicle with hands raised in the air was outrageous and conscious shocking.

134. The Officer committed violence to obtain plaintiff Fields phone video, recording officer committing police misconduct, was also outrageous and conscious shocking.

135. The fact that Officer Chatmon was willing to take plaintiff's life, and health to confiscate and conceal his evidence from being revealed.

136. The baseless and needless attack after profiling plaintiff Fields on two separate occasions in the night, at separate locations, in the contest of fabricated, allegation by the Defendant Officer, was so egregious and extraordinary, and so sever, as to amount to brutal and inhumane abuse of official power.

137. Chatmon's audacity in pretending after attacking plaintiff Fields, that in the context of uncorroborated allegations that plaintiff Fields was driving at a high rate of speed, and eluding or attempting to elude and resisting arrest against officer without violence, and officer pointed his Gun, without force or violence from Plaintiff.

138. Officer Chaton failed to take or send plaintiff to the hospital to remove taser tines, instead EMS were allowed to jerk tine from my chest leaving a

hole in my chest is and even further pinnacle of outrageous, egregious and callous abuse of official power.

139. Officer openly viewed the content with other Officers of plaintiff Fields seized phone video evidence, after he had inflicted life threatening atrocities upon Mr. Fields and all the aftermath, to then charge him with a felony further solidifies this claim for relief in its entirety.

140. Officer's behavior in this case was conscience shocking and will repeat and reverberate both trauma and harm into Lakeland Community indefinitely until and unless there is extreme and immediately intervention from the Citizens.

## MONELL VIOLATIONS

Plaintiff reallege each and every allegation above with the same force and effect as if fully set forth herein.

Based upon the principals set forth in Monell v. New York City Department of Social Services, 436 U.S. 658, the City of Lakeland is liable for all injuries sustained b Plaintiff as set for the herein. the City of Lakeland bears liability because it's policies, practices and/or customs were a cause of Plaintiff's injuries, and/or because, the City of Lakeland ratified the unlawful actions of Its employee' that caused Plaintiffs injuries. The City of Lakeland and it Supervisory officials, maintained or permitted one or more of the following official policies, customs or

practices which displayed reckless and deliberate indifference to the constitutional rights of persons such as Plaintiff, and were a direct cause of Plaintiff damages:

a. By employing and retaining as police officer and other personnel, including Defendant Chatmon and Supervisors, who the City of Lakeland Police department and supervisors at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority by using excessive force, and for mistreating citizens by failing to follow written Police Department Policies of the Lakeland of the City of Lakeland including the use of excessive force, and reckless disregard for human life and safety;

b. By inadequately disciplining the City of Lakeland police officers and other personnel, including officer Chatmon, and the City of Lakeland Supervisors each knew or in the exercise of reasonable care should have known had aforementioned propensities and character traits including the propensity for violence, reckless disregard for human life and safety, and the use of excessive force.

c. By maintaining grossly inadequate procedures for reporting, supervising, investigative, reviewing, disciplining and controlling

the intentional crimes by Officer, and others who are the City of Lakeland' employees;

d. The use of force during the May 14, 2021 arrest was ratified by the City of Lakeland when it failed to discipline or retrain the City of Lakeland Police officer including, Supervisor, for their conduct: and

e. The above-mentioned ratification promotes the belief that they can violate the right of persons, such as Plaintiff Fields, with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employee benefits.

## PRAYER OF RELIEF

WHEREFORE, Plaintiff Fields respectfully requests that this Court enter judgment in Plaintiff's favor and against the Defendants and grant:

a. Declaratory and injunctive relief, as appropriates;

b. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, loss of liberty, privacy, sense of security and individual dignity, and other pain and suffering on all claims allowed by law in an amount to be Twenty Million Dollars or to be determined at Trial;

c. All economic losses and damages on all claims allowed by law to be determined at trial;

d. Punitive damages on all claims allowed by law and in an amount determined at trial;

e. Issuances of an Order mandating appropriate equitable relief, including, but not limited to:

  a. The imposition of policy changes designated to avoid future similar misconduct by Defendants;

  b. Mandatory termination designed to prevent future similar misconduct by Defendant(s);

f. Pre-and post-judgment interest at the lawful rate; and

g. Any further relief that this Court deems just and proper, and any other relief as followed by law.

**REQUEST FOR TRIAL BY JURY**

Plaintiff request a trial by jury on all issues so triable
Respectfully submitted this 8th day October 2026
Mailed Defendants on October ______, 2026.

Darell L. Fields prose
P.O. Box 1428
Dundee, FL. 33838
863-662-8902
dfields3176@gmail.com